IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re: | ) | In Proceedings under Chapter 7 |
| | ) | |
| Angus Topics, Inc., | ) | Case No. 12-40078 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| Cynthia A. Hagan | ) | Adv. No. 12-4043 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Angus Ink, | ) | |
| | ) | |
| Bingman Publications, L.L.C., and | ) | |
| | ) | |
| Ernest R. Bingman, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

This matter comes before the Court on the Plaintiff's Complaint to Avoid Fraudulent

Transfers of Monetary Assets and Personal Property.  A trial was held on June 3, 2013, in the

United States Bankruptcy Court in Benton, Illinois.  The Plaintiff appeared personally and

through counsel, Terry Sharp.  Defendant Ernest Bingman appeared personally and through

counsel, Doug Antonik.  The other Defendants appeared through counsel Antonik.  The Court

heard testimony from the Trustee, Mr. Bingman, and Connie Bingman, an employee of the

Debtor and Defendants *Angus Ink* and Bingman Publications.  Both parties submitted exhibits,

some of which were admitted into evidence.  At the close of the trial, the Court asked the parties

to submit findings of fact and conclusions of law based only on the evidence presented at trial.

The Plaintiff filed a complaint in three counts on June 11, 2012.  The first two counts

sought to avoid fraudulent transfers under 11 U.S.C. §§ 548(a)(1)(A) and (B), respectively.  The

1

third count sought to recover the avoided transfers for the benefit of the Chapter 7 estate under

11 U.S.C. § 550.  The Plaintiff also requested reimbursement for costs and an award of punitive

damages against the Defendants.

## I.   FACTS

The transfers the Plaintiff seeks to avoid involve two cattle magazines, a publisher, and

the man behind them all, Ernest Bingman ("Bingman").  Bingman had been publishing a

magazine called *Angus Topics* ("*Topics*") since 1989.  *Topics* is the Chapter 7 Debtor here.

Although the magazine was profitable in its early years, some kind of crisis in Angus cattle (the

details of which are unimportant for purposes of this opinion) caused the value of the cattle to

drop precipitously in 2007 and 2008.  When the cattle market plummeted, it affected other

aspects of the industry on the whole, including *Topics*.  The magazine's subscriber base

narrowed, and the advertising which had, by and large, kept the magazine in the black

diminished.  The magazine was losing money at least as early as 2010.  By August of 2010, the

publishing company that had handled publication of the magazine ceased providing services to

*Topics* because of its failure to pay for those services.

The Plaintiff alleges that at some point in late 2010 or early 2011, Bingman came up with

a plot to slough off the magazine's debt while remaining in the Angus cattle magazine business.

He would simply form a new limited liability corporation, Bingman Publications

("Publications"), to publish a magazine.  He would also create a new magazine, *Angus Ink*

("*Ink*"), that would be able to start fresh—without the debts that were dragging down *Topics*.

Publications was formed on March 15, 2011.  The first issue of *Ink* was mailed out in September

of 2011.

It is the Plaintiff's contention that the Defendants fraudulently transferred assets held by *Topics* to themselves.  There are two kinds of transfers the Plaintiff alleges: first, the Defendants transferred to themselves funds that should have been deposited into *Topics*'s account and used the Debtor's tangible assets for their own benefit (collectively the "transfer of tangible assets"); second, they transferred the magazine's accounts receivable, subscriber list (referred to in the complaint as a "mailing list"), advertiser list (referred to in the complaint as a "customer list"), and goodwill.  *See* Plaintiff's Complaint, ¶¶ 16-17.

## II. AUTHORITY

 Fraudulent transfers may be avoided under 11 U.S.C. § 548, which provides:

(a)(1) The Trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

The Trustee bears the burden of proving the elements of a fraudulent transfer under either §§ 548(a)(1)(A) or (B) by a preponderance of the evidence.  *Mottaz v. Oswald et al. (In re Frierdich)*, Adv. No. 00-3189 (Bankr. S.D. Ill. June 28, 2001).

3

Under § 548(a)(1)(A), the Trustee must prove the debtor's (or in this case, the debtor's insider's) actual intent to hinder, delay, or defraud creditors.  The first element of a cause of action under § 548(a)(1)(A), and (B), for that matter, is proof of a transfer of the debtor's property or interest in property.  *See Mottaz*, Adv. No. 00-3189 at p.4.  It may seem obvious in a fraudulent transfer action, but if a plaintiff cannot prove that the debtor's assets were transferred, the cause of action must fail, and the remaining elements are irrelevant.

The following elements must be shown in order to establish a fraudulent conveyance under § 548(a)(1)(B): (1) a transfer of the debtor's property or interest therein; (2) made within two years of the filing of the bankruptcy petition; (3) for which the debtor received less than a reasonably equivalent value in exchange for the transfer; and (4) either (a) the debtor was insolvent when the transfer was made or was rendered insolvent thereby; or (b) the debtor was engaged or about to become engaged in business or a transaction for which its remaining property represented an unreasonably small capital; or (c) the debtor intended to incur debts beyond its ability to repay them as they matured.[1]  *In re FBN Food Services, Inc.*, 82 F.3d 1387 (7th Cir. 1996); *Schaefer v. First Nat'l Bank (In re Schaefer)*, 2009 Bankr. LEXIS 3135 (Bankr. S.D. Ill. Oct. 15, 2009).

"Value," then, is an essential aspect of the third element of a cause of action under § 548(a)(1)(B).  Lack of evidence regarding the value of the allegedly transferred property makes it impossible to prove that the debtor received less than a reasonable equivalent in the exchange.  *See, e.g., Pension Transfer Corp. v. Beneficiaries under the Third Amendment to Fruehauf Trailer Corp. Ret. Plan (In re Fruehauf Trailer Corp.)*, 444 F.3d 203, 212-14 (3d. Cir. 2006) (an essential "question is whether the debtor received *any* value from the transfer") (emphasis in

---

[1] The fourth possibility, § 548(a)(1)(B)(ii)(IV), is inapplicable to the facts of this case.

4

original); *Sender v. Buchanan (In re Hedged-Investments Assocs., Inc.)*, 84 F.3d 1286, 1289 (10th Cir. 1996).

## III. ANALYSIS

The answer to the Plaintiff's requested relief is simple: Plaintiff's counsel failed to prove that any of the Debtor's tangible assets were transferred. The Plaintiff thus failed to prove the first element of a cause of action under §§ 548(a)(1)(A) and (B). As to the second set of alleged transfers, Plaintiff's counsel did not present any evidence of their value. Counsel for the Plaintiff elicited no testimony from Bingman and offered no testimony from an expert on these valuations, nor did he offer into evidence any exhibit which attempts to value them. With no known value, the Plaintiff failed to prove an essential element of a transfer under § 548(a)(1)(B), and the Court cannot afford the Plaintiff any relief. Counsel further failed to prove that the accounts receivable and subscriber list were transferred, defeating an action under § 548(a)(1)(A). With no value presented as to the advertiser list and goodwill, and in fact, evidence showing that their value was negligible at best, the Plaintiff cannot prove that the Defendants had an intent to hinder, delay, or defraud creditors, even assuming the assets were transferred.

### A.  Transfer of Tangible Assets

The Plaintiff first alleges in the complaint that the Defendants transferred certain tangible assets of the Debtor, namely, deposits and accounts receivable.[2] At trial, the Plaintiff further alleged that the following assets had been transferred: cameras, office furniture, vehicles, loans to shareholders, and inventory. Counsel points to three exhibits that he believes prove the value

---

[2] Counsel regularly distinguished these assets, although they appear to be essentially one and the same. Because counsel lumped accounts receivable with the Debtor's intangible assets at trial and in his proposed findings, accounts receivable are addressed as both a tangible asset (where they properly belong) and in conjunction with the Debtor's intangible assets.

of the Debtor's assets, but he neglected to prove that the assets themselves were transferred.
Plaintiff's Proposed Findings of Fact ¶¶ 114(a), (b), (d). The assets listed on Plaintiff's Exhibit
25a, such as cameras, computers, bookshelves, printers, a vehicle, etc., were not transferred.
Bingman testified that items like computers, furniture, and cameras are still in the office used for
publishing *Topics*. He also testified that he expected the Trustee to pick up the items. The
Trustee may recover them for the benefit of the estate.[3] The Debtor's loan to shareholders noted
in Plaintiff's Exhibit 18 was not transferred. The Trustee may recover it for the benefit of the
estate. As to the accounts receivable, the Plaintiff offered no evidence that the receivables even
had been transferred, let alone proof of their value. Bingman presented evidence and testified
that the source of the funds received by Publications was from new billings. Finally, counsel
points to the Debtor's inventory as evidenced in Plaintiff's Exhibit 18. There was no evidence
that the inventory was transferred. The Trustee may recover the items from the Debtor for the
benefit of the estate.

The Plaintiff thus has failed to prove that any of the Debtor's tangible assets were
transferred. With no proof of a transfer, the Plaintiff cannot sustain an action under either §§
548(a)(1)(A) or (B) with respect to the Debtor's tangible assets.

Plaintiff's counsel attempts to argue points in the proposed findings of fact and
conclusions of law that were not addressed during the trial. The Court has been forced to pore
over the proposed findings and the large quantity of counsel's exhibits to ensure that what is
proposed as a finding of fact was actually presented at trial. Often, the Court found that it was
not. *See, e.g.*, Plaintiff's Proposed Findings of Fact ¶¶ 69, 70-71 [Plaintiff's Exhibit 22 was not
admitted into evidence]; 75-76, 106 [Defendant's Exhibit S was not admitted]. Sometimes the

---

[3] Plaintiff's counsel also tries to prove fraud by noting the depreciation of these assets as shown on a tax return filed
by the Debtor, but this return was filed in 2011. *See* Plaintiff's Proposed Finding of Fact ¶ 83. The assets were
bought between 1990 and 2011. That is ample time for assets to depreciate.

proposed findings were irrelevant.  *See, e.g.*, Plaintiff's Proposed Findings of Fact ¶¶ 83 and

footnote 3 of this Opinion, *infra*; 117-120 [purchase price and first-year revenue from 1989

applied by arbitrary mathematical formula to annualized deposits]; 126-129 [attempting to attack

Defendants' lack of evidence, although the burdens of proof and production are on the Plaintiff].

Counsel's proposed conclusions of law are similarly defective, as he seeks to draw

conclusions which have no evidentiary support in the record.  *See, e.g.*, Plaintiff's Proposed

Conclusion of Law ¶¶ 18(b) [scant evidence on vehicle titles presented at trial; loan to

shareholders disclosed on tax return]; 38 [conclusory statement regarding validity of arbitrary

"80%" valuation method].  He cites *In re Int'l Ski Service, Inc.*, 119 B.R. 654, 658 (Bankr. W.D.

Wis. 1990) for the proposition that "if conversion of the property results in a diminution in value

of the property, the court should permit the trustee to recover the value of the property rather

than the depleted property."  That is a true and accurate statement of the law, but it is not an

accurate reflection of the law applied to the facts of this case.

### B.  Transfer of Accounts Receivable, Subscriber List, Advertiser List, and Goodwill

The Plaintiff also alleges that the Defendants transferred to themselves the Debtor's

accounts receivable, subscriber list, advertiser list, and goodwill.  An essential element of an

action under § 548(a)(1)(B) is proof of the value of the transfer.  *See Pension Transfer Corp.*,

444 F.3d at 212-14, *supra*.  If a plaintiff is unable to prove the value of the property transferred,

the Court has no means of affording relief.

Plaintiff's counsel failed to present *any* evidence of the value of the Debtor's accounts

receivable, subscriber list, advertiser list, and goodwill.  Even in light of this oversight, it is

doubtful that the Debtor received less than a reasonably equivalent value for the transfers

because it was a sinking ship long before its bankruptcy filing.

Plaintiff's counsel offered reams of evidence showing the ***gross*** monthly incomes of both *Topics* and *Ink*, which were substantial, but these numbers do not accurately reflect the magazines' net revenues.  The Defendants offered evidence of the expenses associated with both magazines.  *See, e.g.,* Defendant's Exhibit W.   The Defendants also presented evidence that Bingman and other family members loaned money to *Ink* and Publications which was never repaid.  This fact bolsters Bingman's credibility concerning the lack of profitability of the latter enterprises.

There was evidence that the Debtor did not pay Bingman rent for the space it occupied in real estate he owned.  Bingman was not able to take his salary from *Topics* at the end of its life, and he was not able to take a full salary from *Ink*.  The Defendants' evidence of the expenses of *Ink* and Publications showed that neither made a profit.  The expenses routinely exceeded the income of *Ink* on a monthly basis.  The Plaintiff offered no evidence to rebut this inference other than to insinuate that the expenses paid on Bingman's behalf were not appropriate.  *See, e.g.*, Plaintiff's Proposed Finding of Fact ¶ 113.  Counsel criticizes the funds expended for Bingman personally by *Topics*, *Ink*, and Publications, but the Defendants' evidence showed that the expenses appeared to be for normal salary, benefits, and travel reimbursement.  Moreover, counsel references Defendant's Exhibit S as evidence of this alleged excess.  Plaintiff's Proposed Findings of Fact ¶ 114(c).  This exhibit was not admitted into evidence.[4]  It may not now be used to support a proposed finding of fact.

*Topics* was also losing money before it ceased publication.  Plaintiff's counsel acknowledges this in his Proposed Conclusions of Law: "[T]here is no question that the Debtor was insolvent long before and at the time of transfer."  Plaintiff's Proposed Conclusions of Law,

---

[4] The exhibit was introduced by Defendants' counsel and referenced during examination, but it was never offered into evidence by either party.

¶ 10.  "Topics, Inc.'s tax returns…show a negative net worth of over $100,000 as of December 31, 2010[,] and its bankruptcy petition listed only $77,289.75 in assets, most of which were *uncollectable* accounts receivable, and it scheduled over $434,751.90 in debt."  Plaintiff's Proposed Conclusions of Law, ¶ 18(e) (emphasis added).  Plaintiff's counsel's own proposed findings suggest that assets the Trustee attempts to recover, the accounts receivable, were uncollectable.  Moreover, the Debtor had a judgment against it from its former publisher in excess of $129,000.

With respect to an action under § 548(a)(1)(A), counsel offered no evidence that the Debtor's accounts receivable were transferred.  He made conclusory allegations that the Debtor's subscriber list was transferred, but the Defendants presented evidence showing otherwise.  Bingman testified that he recreated the subscriber list for *Ink* by cobbling together *Topics*'s list with other industry magazine lists.  Connie Bingman corroborated this testimony.  The Defendant's evidence was not rebutted.  As noted above, the failure to prove a transfer is fatal to an action under § 548(a)(1)(A).  No evidence was offered as to the value of *Topics*' subscriber list.

As to the Debtor's advertiser list and goodwill, it seems obvious that if the Debtor did not transfer anything of value, the Defendants could not have the actual intent to hinder, delay, or defraud creditors.  Even assuming *arguendo* that these assets were transferred, Plaintiff's counsel presented no evidence of the value of the advertiser list or goodwill.  It is not the Defendants' burden to prove they had no value.  Nevertheless, the evidence presented at trial shows that neither the advertiser list nor the goodwill had much, if any, value.

The evidence showed that the advertiser list could be found indexed in each edition of *Topics* by name, phone number, and location.  There is minimal marketable value in an

advertiser list if it can be seen by anyone who picks up a copy of the magazine.  The evidence also showed that *Topics* was losing money long before it filed for bankruptcy protection, as detailed above.  What is the goodwill value of a magazine that is losing money?  The asset was of such minimal value as a going concern that Bingman elected to shelve it completely, and the Plaintiff did not present a single expert or prospective buyer to prove its value.  The Defendants cannot be said to have transferred these assets without value, if in fact they were transferred at all, with the intent to hinder, delay, or defraud creditors.  With no showing of actual intent of fraud, the Plaintiff's allegations regarding the advertiser list and goodwill fail under § 548(a)(1)(A).

The Proposed Findings of Fact and Conclusions of Law submitted by Plaintiff's counsel do not reflect the evidence that was presented during the trial.  Counsel offers a self-serving method of valuing *Topics*'s net revenue by calculating 80% of its total revenue.  Plaintiff's Proposed Findings of Fact ¶ 122.  Not only is this based on *Topics*'s total revenue rather than net, it is taken from *Topics*'s first year of publication—which occurred in 1989.  Plaintiff's Proposed Findings of Fact ¶ 117.  This valuation method has no basis in law or fact.  It fails to consider the magazine's expenses, and counsel offered no expert testimony to support it.

Other proposed findings presented by Plaintiff's counsel are similarly flawed.  As one example, he offered the Debtor's financial statement to Integra Bank as evidence of the Debtor's net worth.  Plaintiff's Exhibit 30; Plaintiff's Proposed Findings of Fact ¶¶ 11, 116.  The statement is from 2002.  This is more than a decade old and well before the collapse of the Angus cattle industry that precipitated the Debtor's demise.

## IV. CONCLUSION

The Court finds that the Plaintiff has failed to prove a fraudulent transfer of any of the Debtor's tangible assets. To that end, the Trustee is still able to recover the assets from the Debtor. They have not been transferred. Bingman testified that the computers and office equipment owned by the Debtor were still in the office space he used to publish *Topics* and *Ink*. The Trustee may seek to recover the loan to shareholders and the Debtor's inventory. As to the 2001 Ford F-250, the Trustee can sell whatever interest the estate holds in the truck's title. The record indicates that Publications used the credit card processing system of *Topics*, but the deposits received were generated by Publications. The credit cards discussed in Bingman's testimony were taken out in his name personally. He is liable for their debts; the Debtor is not.

The Court notes two payments made to Publications by *Topics* in October of 2011 in the amounts of $1,250 and $1,450.[5] *See* Plaintiff's Exhibits 35 and 36. Bingman testified that these were loans from Publications to *Topics*. The repayment of these loans may have been a preference at best, as *Topics* was owned by Bingman, an insider. Because these preferences were not alleged, however, the Defendants did not have an opportunity to properly defend against them.

As to the Debtor's accounts receivable and subscriber list, Plaintiff's counsel presented no evidence of their transfer or value. To the extent accounts receivable are due *Topics*, the Trustee may seek to recover them. As to the advertiser list and goodwill, there was again no evidence of their transfer or value. If the Trustee is able to find a buyer, they both could still be sold. Their value cannot have been great, anyway, as the ship was already sunk long before there was any alleged transfer. *See* Plaintiff's Conclusions of Law ¶ 8(a). Assuming they were

---

[5] Plaintiff's counsel only scratched the surface of these checks during his examination of Bingman at trial, and they are not mentioned at all in the Proposed Findings of Fact and Conclusions of Law.

transferred, the Plaintiff failed to prove that the Defendants had the intent to hinder, delay, or defraud creditors.

Since the Court may not award any relief because causes of action under § 548 were not proven, the Plaintiff's request for punitive damages must fail, too.  *See By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956, 961 (7th Cir. 1982); *Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 60 (Ill. 2005).

SEE ORDER ENTERED THIS DATE.

ENTERED: September 30, 2013

/s/ Laura K. Grandy
UNITED STATES BANKRUPTCY JUDGE/8